UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
ESTATE OF JACQUELINE NELSON et al.,                  :
:
                           Plaintiffs,          :                  21-CV-7811 (JMF)
:
       -v-                                                            :                  OPINION AND ORDER
:
MILLERKNOLL, INC., f/k/a HERMAN MILLER, INC.,        :
:
                           Defendant.          :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs — the Estate of Jacqueline Nelson, Patrice Nelson, and Georges Mico Nelson — bring claims against MillerKnoll, Inc., formerly known as Herman Miller, Inc. ("HMI"), relating to intellectual property developed or owned by the late George Nelson, a furniture designer perhaps best known for the "Bubble Lamp." Broadly speaking, Plaintiffs allege that HMI engaged in a complex scheme to defraud them of their rights to that intellectual property. HMI now moves, pursuant to 28 U.S.C. § 1404(a), to transfer the case to the United States District Court for the Western District of Michigan, invoking a forum-selection clause in a contract that Jacqueline Nelson had entered into with an entity that Plaintiffs allege is an alter ego of HMI. *See* ECF No. 65.[1] In opposing transfer, Plaintiffs argue that the contract is no longer in effect (due to the terms of a settlement in a separate lawsuit to which HMI was not a party) and, in any event, that the forum-selection clause does not apply, or should not be applied, to their claims. Plaintiffs' allegations about the contract are certainly troubling and may

---

[1]     In the alternative, HMI moves to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

ultimately bear on the merits of their claims, but the Court concludes that they do not provide a basis for avoiding transfer. Accordingly, and for the reasons that follow, HMI's motion to transfer is GRANTED.

## RELEVANT BACKGROUND

This case involves a dispute over the rights to intellectual property — namely, intellectual property that was developed or owned by George Nelson ("Mr. Nelson"). ECF No. 64 ("SAC"), ¶¶ 26-28. Mr. Nelson died on March 5, 1986, at which time right, title, and interest in his intellectual property (the "Nelson IP") passed to his widow, Jacqueline Nelson ("Mrs. Nelson"). *Id.* ¶ 9. Plaintiffs allege that, beginning in 2005, HMI engaged in a scheme to "steal" the Nelson IP by "tak[ing] advantage of Mrs. Nelson's advanced age" and "diminished mental capacity." *Id.* ¶¶ 1, 47, 50; ECF No. 69 ("Pls.' Mem."), at 5. Most of the particulars of the alleged scheme are not especially important for present purposes. But two aspects of the alleged scheme are indeed relevant. First, Plaintiffs allege that, in 2010, HMI created the George Nelson Foundation ("GNF"), a non-profit organization "over which HMI . . . exerted total control and domination." SAC ¶ 2. According to Plaintiffs, "GNF purported to be a foundation designed to showcase George Nelson's work," but "its true purpose was (and has always been) to garner Plaintiffs' trust and to further the fraudulent scheme." *Id.* Indeed, Plaintiffs contend that GNF was HMI's "alter ego and puppet." *Id.* ¶ 80; *accord id.* ¶ 2.

Second, in October 2012, GNF increased its "efforts to persuade Mrs. Nelson to assign all of her rights in the Nelson IP to GNF via an Intellectual Property Assignment Agreement" or "IPAA." *Id.* ¶ 92. In particular, Karen Stein, HMI's Executive Director, and GNF's counsel falsely "presented the assignment" to Mrs. Nelson "as necessary to protect her husband's legacy by enabling GNF to enforce the rights in the Nelson IP from, for example, trademark infringers."

*Id.* Between October 2012 and January 2013, Stein sent multiple drafts of the proposed agreement to Mrs. Nelson; although Mrs. Nelson's "health and mental competency was declining," Stein allegedly did not copy Mrs. Nelson's person lawyer or draw Mrs. Nelson's attention to revisions that "overwhelmingly favor[ed] HMI's interests to Mrs. Nelson's detriment." *Id.* ¶¶ 93-104. Mrs. Nelson ultimately "signed the agreement without any witnesses and upon information, did so without comprehending what the document was or its legal import." *Id.* ¶ 105. Indeed, according to Plaintiffs, "Mrs. Nelson's treating providers . . . determined that she lacked the capacity to execute such an agreement at that time." *Id.* ¶ 106.

Four features of the IPAA are especially pertinent here.[2] First, the Agreement is between Mrs. Nelson and GNF; HMI itself is not a signatory. *See* ECF No. 57-3 ("IPAA"), at 1. Second, the IPAA provides that Mrs. Nelson "irrevocably assigns and transfers" to GNF "all rights, title and interest" she "may have" in and to all of the Nelson IP. *Id.* ¶ 1(b). Third, and perhaps most relevant here, the IPAA contains a provision titled "Governing Law." *Id.* ¶ 12. It provides that "[t]he validity and effectiveness of this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Michigan, without giving effect to the provisions, policies or principles of any state law relating to choice or conflict of laws." *Id.* It also states that "[a]ny legal action or proceeding with respect to this Agreement may be brought exclusively in the federal or state courts located in the State of Michigan." *Id.* Finally, the IPAA contains a severability clause, which provides in relevant part that "[e]ach

---

[2] Plaintiffs did not attach the IPAA to the operative Second Amended Complaint even though they had attached it to their previous complaints. *See* ECF Nos. 1-3, 57-3. In any event, the Court plainly may consider the IPAA, both because it is incorporated by reference into the Second Amended Complaint, *cf. ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), and because a court may consider material outside of the pleadings in deciding a motion to transfer, *see, e.g., Mohsen v. Morgan Stanley & Co., Inc.*, No. 11-CV-6751 (PGG), 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (collecting cases).

provision . . . shall be considered separable; and if, for any reason, any provision . . . is determined by a court of competent jurisdiction to be invalid, unlawful, or unenforceable, such determination shall not affect the enforceability of the remainder of this Agreement." *Id.* ¶ 9.

Plaintiffs filed this lawsuit against HMI, GNF, Stein, and the Karen D. Stein LLC on September 17, 2021. *See* ECF No. 1. On consent of all parties, the Court originally stayed the case "pending resolution of a related case in Illinois state court." ECF No. 50. On January 27, 2022, the Illinois case "was settled and dismissed." SAC ¶ 203. Of particular significance here, the terms of the settlement "included the unwinding of the IPAA and determining it void, as if it never had existed, and that [sic] the assignment back to Plaintiffs of any rights GNF held in the Nelson IP." *Id.* Thereafter, Plaintiffs filed the operative Second Amended Complaint naming only HMI as Defendant and alleging six causes of action. First, Plaintiffs allege fraud, contending that "Mrs. Nelson was tricked [by HMI] into transferring the Nelson IP" pursuant to the IPAA. SAC ¶¶ 220-23. Second, and related, Plaintiffs allege conspiracy to commit fraud based on HMI's "dup[ing of the] severely ailing, 93-year old Mrs. Nelson into signing the IPAA," *id.* ¶ 246, which they contend "was an essential step towards HMI's ultimate goal of obtaining ownership of" the Nelson IP, *id.* ¶ 114. Third, Plaintiffs allege that Defendants' allegedly fraudulent acquisition of the Nelson IP "for less than full consideration" constituted unjust enrichment. *Id.* ¶ 256. Fourth and fifth, Plaintiffs allege trademark infringement and unfair competition, pursuant to the Lanham Act, 15 U.S.C. § 1125, and common law, contending that Defendant's use of the Nelson IP is unauthorized, *id.* ¶¶ 273, 286. Finally, Plaintiffs seek cancellation of certain design registrations for alleged infringement of the Nelson IP pursuant to 15 U.S.C. §§ 1119, *et. seq*. SAC ¶¶ 293-296.

## DISCUSSION

As noted, HMI moves pursuant to Section 1404(a) to transfer venue to the Western District of Michigan. That Section provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Courts generally consider a host of factors in evaluating whether to grant or deny a motion to transfer pursuant to Section 1404(a). *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (listing the factors). "But 'the calculus changes when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.'" *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, at *4 (S.D.N.Y. Jan. 23, 2019) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)) (cleaned up). "That is, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (internal quotation marks omitted).

Where there is a valid forum-selection clause, courts conduct a four-part inquiry to determine whether it should be enforced. "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires [a court] to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (internal citations omitted). If the party seeking enforcement satisfies the first three requirements, the burden shifts to the other party in the fourth and final step to "rebut the presumption of enforceability by making a sufficiently

5

strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). When the relevant agreement has a choice-of-law provision, the first and fourth steps of the inquiry are governed by federal law, while the second and third are governed by the substantive law designated in the agreement. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 223-24 (2d Cir. 2014) ("[Q]uestions of enforceability are resolved under federal law, while interpretive questions — questions about the meaning and scope of a forum selection clause — are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause.").

In this case, Plaintiffs argue that because the IPAA was voided as part of the Illinois settlement with GNF, "it is as if the IPAA never existed, and therefore, there is no forum selection clause." Pls.' Opp'n 17-18. Thus, before engaging in the four-part inquiry discussed above, the Court must decide whether there even is a forum-selection clause to enforce.

**A. Whether the Forum-Selection Clause Remains in Effect**

The parties do not address whether federal law or Michigan law governs the question of whether the IPAA's forum-selection clause remains in effect. But the Court need not and does not decide the issue because, either way, Plaintiffs' threshold argument — that "there is no forum selection clause" — fails. *See, e.g.*, *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) ("[W]here the court has determined that the result would be the same under either jurisdiction's law, it need not decide which to apply." (cleaned up)).

First, applying federal law, courts have held that a procedural clause in a contract can survive the contract's rescission. *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967); *see also, e.g.*, *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life*

*Ins. Co.*, 774 F.2d 524, 529 (1st Cir. 1985). In *Prima Paint*, for example, the Supreme Court held that even when a contract is voided for fraud, the contract's arbitration clause survives unless the challenging party can show that the clause itself was induced by the fraud. Courts have held that this rule applies with equal force to venue and choice-of-law provisions. *See, e.g.*, *Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 729 (S.D.N.Y. 1997); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (noting that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits . . . the procedure to be used in resolving the dispute"). Here, however, Plaintiffs do not allege any defect in the IPAA's forum-selection clause *itself*; nor is there any reason to believe that voiding the forum-selection clause was the purpose of the settlement with GNF, which concerned the assignment of intellectual property rights. *See* SAC ¶ 203. It follows that in a case "with respect to" the IPAA, IPAA ¶ 12, the clause still has force.

Second, Michigan courts have similarly held that rescission of a contract does not necessarily void all provisions. *See, e.g.*, *Robertson v. Swindell-Dressler Co.*, 267 N.W.2d 131, 140 (Mich. App. 1978). Whether a particular provision survives depends on whether the parties intended it to be severable. *See id.* Most relevant here, Michigan courts have held that procedural provisions of a contract — that is, provisions that govern the conduct of litigation rather than define the parties' substantive rights — are generally intended to be severable and, thus, may outlive the rescission of a contract. *See, e.g.*, *Samuel D. Begola Services, Inc. v. Wild Bros*, 534 N.W.2d 217, 220 (Mich. App. 1995). In *Samuel D. Bergola Services*, for example, the court held that provisions of a contract governing attorney's fees survived rescission because they fulfilled the parties' intention to deter litigation. *Id.* at 220. The same principle applies *a fortiori* to forum-selection clauses, which also channel litigation by functioning as a "contractual

7

agreement to forgo [other states] as a forum for adjudication." *Robert A. Hansen Fam. Tr. v. FGH Indus., LLC*, 760 N.W.2d 526, 532 (Mich. App. 2008). That is especially true where, as here, the contract contains a severability provision. *See, e.g.*, *Melki v. Clayton Charter Twp.*, 2013 WL 4504443, at *7 (Mich. Ct. App. Aug. 22, 2013).

Finally, whether federal or Michigan law applies, HMI is not precluded from seeking to enforce the forum-selection clause for an independent reason: It was not a party to the Illinois settlement that allegedly "unw[ound]" the IPAA. SAC ¶ 203. Assuming for the sake of argument that *HMI* is independently entitled to enforce the forum-selection clause — a matter discussed below — it is not precluded from doing so because *GNF* agreed to forego *its* rights under the IPAA. To hold otherwise would permit a party in Plaintiffs' position, with potentially valid claims against both a contractual counterparty and a related party, to prejudice the independent rights of the latter (to, say, arbitration or litigation in a particular forum) by paying off the former. There is no reason in law or logic to permit a party to do that where the non-settling party has its own rights under the contract. Put differently, GNF's agreement to rescind the contract does not bind HMI to the extent that HMI has its own rights under the contract.

In short, whether federal law or Michigan law applies to the question, the Court concludes that the Illinois settlement with GNF does not preclude HMI from relying on the IPAA's forum-selection clause *if* the clause applies and is enforceable. Whether the clause applies and is enforceable is a function of the standard four-part test discussed above.

## B. Whether the Forum-Selection Clause Should Be Enforced Here

Applying the four-part test, the Court concludes that this case should be transferred. Notably, only three of the four factors are even disputed. Plaintiffs wisely do not dispute HMI's argument as to the second step — that, under Michigan law, the forum-selection clause qualifies

as mandatory.  *See* Pls.' Opp'n 20 n.8.  Michigan courts have generally found clauses to be mandatory when "parties []use [] restrictive language such as 'exclusive,' 'sole,' or 'only' to make plain their intent to select an exclusive forum."  *Rieth Riley Const. Co. v. Ecopath Contracting LLC*, No. 321562, 2015 WL 3604633, at *2 (Mich. Ct. App. June 9, 2015); *accord Offerdahl v. Silverstein*, 569 N.W.2d 834 (Mich. Ct. App. 1997).  Here, the clause does just that, providing that cases "be brought *exclusively* in . . . the State of Michigan."  IPAA ¶ 12 (emphasis added).  Thus, the Court focuses its analysis on the other three steps of the inquiry.

First, the forum-selection clause was "reasonably communicated" to Mrs. Nelson.  Significantly, courts in this Circuit "assume that a forum-selection clause stated in clear and unambiguous language was reasonably communicated to the plaintiff."  *Bent v. Zounds Hearing Franchising, LLC*, No. 15-CV-6555 (PAE), 2015 WL 7721838, at *4 (S.D.N.Y. Nov. 30, 2015).  That is the case here, as the provision unambiguously provides that "any legal action or proceeding" with respect to IPAA "may be brought exclusively in the federal or state courts located in the State of Michigan."  IPAA 4.  And while the clause is included in a paragraph titled "Governing Law," the IPAA as a whole contains only thirteen relatively short operative paragraphs.  In arguing that the clause was not reasonably communicated, Plaintiffs focus on the alleged circumstances surrounding the negotiation and signing of the IPAA, most notably on Mrs. Nelson's mental state.  *See* Pls.' Opp'n 19.  Plaintiffs' allegations are certainly troubling — and may well be pertinent to the merits of their claims — but they do not bear on the question of reasonable notice, which is "a question of law" that turns on the objective question of whether the clause is stated in "clear and unambiguous language."  *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d. Cir. 1995).  Thus, the Court finds that the clause was reasonably communicated.

The third step — "whether the claims and parties involved in the suit are subject to the forum selection clause," *Phillips*, 494 F.3d at 383 — presents a closer question, but also cuts in favor of enforcement.  Plaintiffs contest the third step on two distinct grounds: (1) that HMI was not a signatory to the IPAA and (2) that Plaintiffs' claims for relief are not "with respect to" the IPAA.  The former contention is easily rejected.  Under Michigan law, the fact that a party is not a signatory to an agreement containing a forum-selection clause does not necessarily preclude the party from enforcing the clause.  Instead, Michigan courts ask whether, "in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Holtzman v. Vill. Green Mgmt. Co. LLC*, No. 19-CV-11150, 2020 WL 264331, at *7 (E.D. Mich. Jan. 17, 2020) (citations omitted).  More to the point, courts have applied clauses to non-signatories where "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 fn.5 (9th Cir. 1988).  HMI certainly meets that test given that the crux of Plaintiffs' argument is that GNF operates as a proxy or "alter-ego" for HMI.  *See, e.g.*, SAC ¶ 2.  That is, Plaintiffs *themselves* allege the necessary close relationship.

Additionally, the Court concludes that Plaintiffs' claims are "with respect to" the IPAA and, thus, fall within the scope of the IPAA's forum-selection clause.  Their fraud and conspiracy to commit fraud claims hinge entirely on HMI's allegedly fraudulent inducement of Mrs. Nelson into signing the IPAA.  SAC ¶¶ 224, 229.  And their claim for unjust enrichment relies on HMI having "gained appreciable benefits . . . as a result of fraudulently obtaining the Nelson IP from Mrs. Nelson" — through the IPAA — "for less than full consideration." *Id.* ¶ 256.  In other words, Plaintiffs' tort claims "ultimately depend on the existence of the contractual relationship between the parties [and the] interpretation of the contract." *Thomas-Williams v. MGM Grand*

*Detroit LLC*, No. 08-CV-11030, 2009 WL 916952, at *4 (E.D. Mich. 2009).  Moreover, resolution of these claims will require interpretation of the IPAA.  *See Pedersen v. Kinder Morgan, Inc.*, No. 21-CV-10388, 2021 WL 5757189, at *4 (E.D. Mich. Nov. 1, 2021) (enforcing a forum-selection clause with respect to claims whose resolution depended on the "interpretation of contractual provisions and performance required under the terms of the [contract]").  Meanwhile, Plaintiffs' claims under the Lanham Act are premised on the assertion that they are the sole owners of the Nelson IP, which — as Plaintiffs implicitly all but concede, *see* Pls.' Opp'n 23 — turns on the parties' rights under the IPAA.

To be sure, Plaintiffs' claims do not literally arise under the IPAA.  But Plaintiffs claims against HMI are "with respect to" the IPAA — the language of the forum-selection clause — because every one of Plaintiffs' claims is premised on the initial assignment of rights to GNF in the IPAA.  *See, e.g.*, *Thomas-Williams*, 2009 WL 916952, at *4 (holding that a forum-selection clause applies to non-contractual claims that "ultimately depend on the existence of the contractual relationship between the parties [and the] interpretation of the contract").  In arguing otherwise, Plaintiffs contend that the "IPAA is merely a fruit of HMI's fraud" and that the "circumstances surrounding the execution of the IPAA are evidence of HMI's fraud."  Pls.' Opp'n 18-19.  But the fact is that the IPAA is critical to all of Plaintiffs' claims.  And under Michigan law, a plaintiff cannot avoid enforcement of a forum-selection clause by creatively pleading non-contractual claims that still turn on the contract.  *See Umlaut, Inc. v. P3 USA, Inc.*, No. 19-CV-13310, 2020 WL 4016098, at *3 (E.D. Mich. July 15, 2020) (holding that non-contractual claims that "involve the same operative facts as a parallel claim for breach of contract" are subject to an otherwise-valid forum selection clause).

11

In light of the foregoing, the burden shifts to Plaintiffs "to rebut the presumption" that the forum selection clause is enforceable "by making a sufficiently strong showing that enforcement would be unreasonable or unjust." *Phillips*, 494 F.3d at 383-84 (internal quotation marks omitted). They can do so by showing that "(1) [the forum-selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Martinez*, 740 F.3d at 228 (cleaned up). Plaintiffs emphasize the first of these factors. Pls.' Opp'n 19-21. But the focus of the relevant inquiry is on the clause itself and, as discussed above, Plaintiffs do not demonstrate that the clause itself was a result of fraud or overreaching. *See Prima Paint Corp.*, 388 U.S. at 402; *see also Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 199 (7th Cir. 2015) ("The fact that a contract may have been procured by fraud does not negate the validity of a forum selection clause; instead, we look to whether a forum selection clause *itself* was procured by fraud." (cleaned up)). Plaintiffs' other arguments are largely a reiteration of their prior contention that the clause was not reasonably communicated and, in any event, do not implicate any *public* interest against enforcement. *See, e.g., Atl. Marine Const. Co.*, 571 U.S. at 51 ("[T]he court should not consider the parties' private interests aside from those embodied in the forum-selection clause; it may consider only public interests."). Accordingly, the Court finds that the forum-selection clause is enforceable and applies to

Plaintiffs' claims against HMI and that transfer to the United States District Court for the Western District of Michigan is appropriate.[3]

## CONCLUSION

For the foregoing reasons, HMI's motion to transfer is GRANTED. Its motion, in the alternative, to dismiss is thus DENIED as moot (and without prejudice to renewal following the transfer). The Clerk of Court is directed to terminate ECF No. 65; to transfer this action to the United States District Court for the Western District of Michigan; and to close this case.

SO ORDERED.

Dated: April 28, 2023
 New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[3] The IPAA does not specify the Western District of Michigan; it provides only that "[a]ny legal action or proceeding with respect to this Agreement may be brought exclusively in the federal or state courts located in the State of Michigan." IPAA ¶ 12. But Plaintiffs do not oppose, and thus have forfeited any challenge to, HMI's choice of that District.